[No. 23149.   Department One.   July 9, 1931.]

FRANK BLONDEN *et al., Respondents*, v. GENERAL PE-
TROLEUM CORPORATION OF CALIFORNIA, *Appellant.*[1]

[1]Reported in 300 Pac. 1058.

*Bogle, Bogle & Gates, Warren Brown, Jr.,* and *Ralph O. Olson,* for appellant.

*R. W. Greene,* for respondents.

MITCHELL, J.—Frank Blonden and his wife entered into a written contract with General Petroleum Corporation, a corporation, whereby they leased to the corporation a gasoline service station and equipment owned by them in Bellingham for the period commencing June 1, 1929, and ending June 25, 1930, in consideration of five dollars per month and one cent per gallon for all gasoline sold at the station. The lessors agreed to and did handle motor fuel products purchased from the corporation during the term of the lease. After the expiration of the term, they brought this action to recover one cent per gallon on 33,918 gallons of gasoline sold by them, and to recover, also, $65 for the thirteen monthly payments due under the contract, making a total of $404.18.

By its answer, the corporation admitted the contract and that the plaintiffs had handled its gasoline, and affirmatively pled payment of all its obligations under the contract. Plaintiffs denied defendant's allegation of payment. Upon the trial to a jury, there was a verdict for the plaintiffs in the sum of $209. The defendant has appealed from a judgment on the verdict.

The respondents' proof showed that they sold the amount of gasoline stated in the complaint. On the part of the appellant, it was shown that it had made thirteen five dollar payments by check during the term. As to the one cent per gallon on the amount of gasoline delivered, appellant's proof tended to show that the gasoline was delivered, as needed from time

to time, by a distributing agent by a gasoline tank wagon, and that at each sale a "delivery receipt" was made out in duplicate, one of which was delivered to the respondents showing the number of gallons of gasoline delivered, upon which statement appears, in rubber stamp form, "Retail price," and also, "Less— lease gallonage rental" and "commission as per agreement," a separate line for each of those items, and each line of which was filled in by writing the amount, the retail price according to the price of oil at the time. As an example, one receipt shows: 200 gals. retail price 20½c, $41; less lease gallonage rental 1c per gallon, $2; less commission as per agreement 3c per gallon, $6, leaving a balance of $33.

Some two hundred of these statements were introduced in evidence. They varied as to the number of gallons purchased and the price per gallon, all of them containing the item of one cent on the line "lease gallonage rental," while on the line "commission as per agreement" the amount stated is generally three cents, but a number of them contain either five cents or four cents per gallon, all of which were the subject of more or less testimony and explanation by the witnesses.

The respondents, while admitting they received the thirteen five dollar checks, testified that they surrendered each check back to the corporation so as to save, about the first of each month, an unauthorized additional charge of 2½c per gallon on the first two hundred gallons of gasoline delivered that month, and that each payment of five dollars was therefore no compensation whatever to them. Their testimony as to the one cent per gallon was to the effect that they never received it as rent or at all; that they had no commission contract whatever with the appellant, but that their contract was that they were to get the gasoline at four cents per gallon less than the tank wagon

or retail price; that, at the time each delivery receipt was made out and delivered, nothing whatever was said between the parties about the item thereon of one cent "gallonage rental" or the item of "commission as per agreement," whether stated to be three cents, four cents, or five cents; that no attention whatever was paid to either of those two things, and that all they cared for or did was that, upon ascertaining the amount of gasoline delivered and the retail price, they simply deducted therefrom four cents per gallon according to the agency contract between them and paid the balance in cash at that time.

As illustrated in the two hundred gallon sale hereinbefore referred to, they paid the $33 because that was the contract price after deducting from the retail price of $41 the sum of $8, or four cents per gallon for the two hundred gallons. They further testified that at no time during the year did they expect payment of rental because, the period being a continuation of a former lease to the same party, they expected that, as theretofore, they would not receive the rent until the end of the year.

This, in substance, was the effect of the proof at the close of plaintiffs' case and thereafter at the close of all the testimony; and, contrary to the contentions of appellant on its assignments of error, was sufficient, in our opinion, to take the case to the jury, and to sustain the verdict, which is greatly less than the amount sued for.

On account of the statements or delivery receipts containing the item "lease gallonage rental 1c," appellant contends that each statement or delivery receipt amounted to a settled account as to the rent; and the case of *Austin v. Union Lumber Co.*, 95 Wash. 608, 164 Pac. 245, is cited and relied on. We think, however,

that case is not in point. There, the one who had performed services went to his debtor for pay. He received an itemized statement showing credits and debits, together with a check to cover the balance according to that statement. He made no protest or objection, and thereafter used the check. Later he sued, claiming that the credits allowed him were less than they should have been, but without alleging any mistake or fraud in the statement. It was held that his account had been settled.

But in the present case, the jury were at liberty to believe that the respondents were not expecting any rent to be paid until the end of the year; that they never discussed nor paid any attention to the item of gallonage rental stamped on the statements; that they were not getting gasoline on consignment at all, but purchasing it outright and paying for it at the time of each delivery, for which purpose they figured the amount delivered at the retail price from which they deducted four cents per gallon according to their oral agreement for handling the gasoline. In the case of *Austin v. Union Lumber Co., supra,* it was said:

"There is much learning in the books as to what acts will, and what acts will not, amount to a settlement of an account, and no general rule can be laid down that will satisfy all of the cases. The consensus of opinion seems to be that it is largely a question of intent, to be gathered from the facts of the particular case."

In the present case the jury were at liberty to believe that the respondents never received, nor intended by their acts to receive, anything on the rent. That view would be entirely consistent with their positive assertions that they did not receive any such rent and, at the same time, would be consistent with their positive and repeated statements while testifying that

they were to get gasoline at four cents per gallon below the retail or tank wagon price.

Some delivery receipts subsequent to June 25, 1930, were admitted in evidence over objections of the appellant. They were similar in form to those delivered during the period of the contract, and were allowed in evidence, as it appears, as tending to explain the meaning of the transactions during the contract period as represented by the delivery receipts for that period. There was no prejudice in this respect. The record shows that the jury was instructed that, if the respondents were allowed to recover, it should be upon the transactions occurring during the time that the contract was in force. The amount of the verdict was entirely within that instruction.

The argument here upon the motion for a new trial presents nothing different from the matters already disposed of herein, and, in our opinion, was properly denied.

Affirmed.

TOLMAN, C. J., HOLCOMB, MAIN, and PARKER, JJ., concur.